## Case No. 15,478.

### UNITED STATES v. JOE.

[4 Chi. Leg. News, 105; 15 Int. Rev. Rec. 57.]

District Court, D. Washington Territory. Sept. Term, 1871.

JURISDICTION OF FEDERAL COURTS—CRIMINAL INFORMATIONS.

1. The proceeding by criminal information in the United States courts is, so far as the court is aware, with a single exception, entirely unknown.

[Disapproved in Re Wilson, 18 Fed. 34.]

2. The supreme court is the only court of the United States which derives any part of its power directly from the constitution. The circuit and district courts are, by authority of the constitution. creatures of the national legislature having such jurisdiction, and only such, as congress has been pleased to confer upon them, and having no common law jurisdiction, though drawing upon the common law for modes of procedure and practice when necessary to carry into effect the jurisdiction given by statute.

[Cited contra in U. S. v. Block, Case No. 14,-609.]

3. The district courts of the territory although they may in a sense be said to be of general jurisdiction, yet in the exercise of their jurisdiction, and the settlement of their practice as circuit and district courts of the United States, are subject to like limitations, with the circuit and district courts themselves. The act of 1789 to establish the judiciary system is an express grant in so many words. It gives jurisdiction over crimes and other matters in it expressly enumerated, and is also an example of grant by implication, for in the express grant of criminal jurisdiction is contained impliedly a grant of authority to summon and regulate grand juries. If the circuit and district courts of the United States have jurisdiction to proceed in criminal causes upon information that authority must spring from the constitution and statutes of the United States either expressly or by implication.

4. The court construes that part of the Vth amendment to the United States constitution relating to prosecutions by indictment and information and the various acts of congress, and defines the powers of the federal courts in criminal cases, and the proper mode of proceeding.

Leander Holmes, U. S. Atty., for the motion.

GREENE, J. The attorney of the United States comes and files a criminal information, charging one Cultus Joe with the offense of selling spirituous liquor to an Indian, contrary to the statute; and moves that a warrant of arrest issue against the accused, that he may be imprisoned or bailed for trial before this court. It is contended that the proceeding by information is concurrent in such cases as this with that by indictment, and is preferable as being the less expensive and more simple mode. There is no doubt in my mind that, if this court can take cognizance of crimes not capital nor infamous, upon information of the United States attorney, a warrant of arrest may properly issue in this case. It is not urged by the prosecuting officer, and does not appear to me, that there is any authority of law which would allow the proceeding by information in this case, which would not also allow it in every case of an offense not capital nor infamous. Nor does there appear to be any reason why an information should not lie in this case, if properly lying in any other. In short, the offense charged is one of a large class of offenses, and the argument before me is, that this class of offenses, and this particular offense, because one of the class, may, under the constitution and laws of the United States, properly be prosecuted by information. Although not infrequent in England and some of the states, the proceeding by criminal information in the United States courts, so far as I am aware, is (with perhaps a single exception, which I will hereafter specify) entirely unknown. By English common law, the attorney-general, or in

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

the vacancy of his office, the solicitor-general, can prosecute by information, without leave of court, for any misdemeanor whatever, except misprision of treason. Cole, Cr. Inf. 9. The master of the crown office, though now required first to obtain leave of court, had originally, on the relation of a common informer or private person, like power. 4 Bl. Comm. 308. The exercise of this power is, however, rarely resorted to by the attorney-general, unless moved to it by a house of parliament, the lords of the treasury, the commissioners of some public department or the very serious nature of the case. Cole, Cr. Inf. 9, 10; Bish. Cr. Proc. § 605. Our prosecuting attorneys correspond in function rather to the English attorney-general than to the master of the crown office, and according to this analogy, it would seem proper, whatever may be the power, that in practice, if criminal informations are to be allowed in United States cases at all, they should only be exhibited in cases of great urgency, or by direction of congress, or of some department. But as the exhibition of an information in England is, notwithstanding the practical limitations, really at the absolute discretion of the attorney-general, the practice of that officer, and the restriction of the master of the crown office, are alluded to here, chiefly as the basis of an inference, that the proceeding by indictment has met with more favor among the English bar and the English people than that by information, and being concurrent was not unlikely to be preferred exclusively by the original law-makers of our national government. If Lord Coke is to be trusted, the provision of Magna Charta that no English subject should be deprived of life, liberty or property, save by the law of the land and the judgment of his peers, is decisive of the preference of the English people at the date of that concession; for, he says, the true sense and exposition of the words "by the law of the land" is "by indictment or presentment of good and lawful men." 2 Inst. 50; and see 2 Hale, P. C. c. 20. And there is good reason to suppose that such a preference did exist in the minds of our first legislators, strengthened and justified by the oppressive use made in this country by the English crown of criminal informations, immediately preceding the colonial struggle for independence.

Certain it seems to be, that the proceeding by indictment has, as matter of fact, had preference given it, not only by the first, but by all subsequent congresses, as is evident from even a hasty survey of the body of our criminal law and the power delegated to our courts. The supreme court is the only court of the United States which derives any part of its power directly from the constitution. The circuit and district courts of the United States are, by authority of the constitution, the creatures of the national legislature, having such jurisdiction, and only such, as congress has been pleased to confer upon them,

and having no common law jurisdiction, though drawing upon the common law for modes of procedure and practice, when necessary to carry into effect the jurisdiction given by statute. The district courts of this territory, although they may in a sense be said to be of general jurisdiction, yet in the exercise of their jurisdiction and the settlement of their practice as circuit and district courts of the United States, are obviously subject to like limitations with the circuit and district courts themselves. The entire jurisdiction and practice of the circuit and district courts is given them either by express letter of written law, or by necessary implication from that letter. The act of 1789 [1 Stat. 73] to establish the judiciary system of the United States is at once an example of an express grant—since in so many words it gives jurisdiction over crimes and other matters in itself expressly enumerated,—and is also an example of grant by implication, for in the express grant of criminal jurisdiction is contained impliedly a grant of authority to summon and regulate grand juries. U. S. v. Hill [Case No. 15,364]. These are instances of the only possible ways in which a circuit or district court has acquired, or can acquire, power or jurisdiction in any case or proceeding. If the circuit and district courts have authority to proceed in criminal causes upon information, then that authority must spring from the constitution and statutes of the United States, either expressly or by necessary implication.

But the power to proceed by criminal information is nowhere expressly granted. Search the constitution and statutes from beginning to end, and it is believed there can be found no provision mentioning or expressly referring to a proceeding by criminal information. The only provision of the constitution that can be construed to hint at such an information is in the fifth amendment, which says, that: "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia when in actual service, in time of war or public danger." The history of this amendment does not, so far as I am informed, disclose the reason of it; that, we are left to gather mainly or wholly from the words themselves. The wording, together with the historical fact, that at the time of its adoption our country had but newly emerged from a condition of military rule, might plausibly be held to indicate a mere design authoritatively to put an end to and prevent any assumption of power by military tribunals to punish persons guilty of capital or otherwise infamous crimes, in time of peace and public security. Yet it can not be denied, that the words are really susceptible of a broader meaning. A broader meaning I think they have, but not the construction counsel has put upon them.

Capital crimes, and most of those called infamous, never were prosecutable at common law otherwise than by indictment, and it has been argued that this amendment was intended to adopt the common law in the main, varying it in part, as matter of right and practice in cases to arise under the United States statutes. It is argued that this amendment forbids procedure, otherwise than by presentment or indictment in some cases, and thereby, by implication, adopts the procedure by information or indictment in other cases. By this is probably meant that it explicitly adopts in substance the common law limits for the exclusive use of indictments, and thereby impliedly adopts substantially the common law limits for their use concurrently with informations. But mark, the prohibition of the constitution is not co-extensive with that of the common law. It is fundamentally different. At common law, some infamous crimes could be prosecuted by information: under this amendment, they must all be prosecuted by presentment or indictment: by the common law prosecution of misprision of treason, otherwise than by presentment or indictment, was forbidden; by this amendment it is not forbidden. An information for misprision of treason would be a novelty in jurisprudence, and would require an explicit grant of power to introduce it. Yet here it is granted by implication, if the power to use criminal information is at all here declared by implication; for it is a rule of construction, applicable here, that what is so made law by implication must be the complement of what is made law by expression; and this amendment, if, by implication, it authorizes the use of criminal informations, must be understood to authorize the use of them in all cases, except where their use is expressly excluded. I do not think that there is any such meaning as counsel would imply, in this constitutional provision.

As the constitution stood before amendment, congress had absolute power to regulate criminal procedure in the national courts, civil and martial. It was prudent, then, by such an amendment, to put a limit to that power. Thus regarded, the utmost implication that can be extracted from it is, not that criminal informations are to lie, but that congress is free to provide, by any mode it sees fit, for prosecution before courts civil or courts martial, of crimes not capital nor infamous. Congress, being thus free, has not seen fit to make any enactment expressly adopting the proceeding by criminal information. There is not, even, in any statute, an allusion to such a proceeding. But, as we have seen, if there is any authority for such a proceeding, it must be granted expressly, or by necessary implication. We do not find any express or implied grant in the constitution, and none express in the statutes. Is there necessarily implied in the statute any such grant? How can there be? Not even an allusion to criminal information is found in the statutes. An indictment will lie in all cases, and is, under the constitution, absolutely necessary in some. A grand jury and its power to indict is necessary by implication, because else many species of crime could not be reached by any mode of procedure known to the law. But a criminal information, however convenient, can never be necessary, since an indictment lies in all cases. How can an unnecessary mode of procedure, all reference to it and recognition of it being absent from the statutes, be claimed to be given by necessary implication from them? I cannot understand how it can.

It seems to be the opinion of reputable law-writers, that the courts of the United States need positive authority of congress, before a proceeding by criminal information can be entertained. 2 Story, Const. (3d Ed.) p. 593, § 1786; Conk. Treatise (4th Ed.) p. 591. That the courts have never understood themselves to possess jurisdiction of a criminal information, is patent from the fact that in not a single reported case from the adoption of the constitution to the present time, a period of eighty years, has a court of the United States assumed jurisdiction of such a proceeding. In one district, indeed, to my knowledge, and I think in some others, in internal revenue cases, where the accused has been desirous to submit himself to the judgment of the court, without the delay and publicity incident to the action of a grand jury, his desire has been accomplished by the filing, by the United States attorney, of a criminal information, and by the entry, by himself, simultaneously, (the United States attorney consenting) of a plea of nolo contendere. In such cases, the accused, by his acts, voluntarily waived all exception to the proceeding, and in no other cases, did I ever hear of an information being accepted by a United States court, as the first pleading in a criminal prosecution. Congress itself, has all along labored under the impression that the mode of procedure by criminal information was not possessed by the courts of its creation. If we turn to the acts of the national legislature, prior to June 11, 1864, touching procedure for the punishment of crime, we find that procedure intentionally and expressly, all made to fit the proceeding by indictment, and that proceeding only. Section 29 of the crimes act of 1790 (1 Stat. 117) gives to persons "indicted" the right to have counsel, the right to witnesses and process; and section 31 provides that the "indictment" for any offense not capital, shall be found within two years, and though the word "information" occurs in this section, it plainly means an information for fines and forfeitures only. In the limitation, section 3 of the act of 26th March, 1804, (2 Stat. 290) "indictment" is named as the appropriate first pleading, in a prosecution for crime, and "information" in a prosecution for a fine or forfeiture. Section 14 of the act of 3rd of

March, 1825, (4 Stat. 118) provides that a party refusing to plead to an "indictment," shall be proceeded against as if he had pleaded not guilty. The act of 3rd March, 1835, (4 Stat. 777) empowers the court to enter a plea of not guilty when a person "indicted" stands mute. The statute of 8th August, 1846, in section 2 (9 Stat. 72) provides for the transfer of an "indictment" from the circuit to the district court, and vice versa; in section three it gives "grand juries" of the district court, cognizance of all crimes and offenses within the jurisdiction of the circuit and district courts; and in section 11 it gives process for witnesses to the defendant in an "indictment" pending. And the first section of the act of 26th February, 1853, (10 Stat. 162) provides for the joinder of offenses in one "indictment," and for the consolidation of "indictments." The statutes that I have cited are not all that might be cited, but they are fair samples. The legislation is uniform, and, to all appearance, that of a legislature ignorant that there is any other authorized mode of procedure than that by indictment. Congress, in the act of 11th June, 1864, (13 Stat. 124) provides a summary proceeding by sworn complaint, instead of indictment, for the trial of offenses not capital nor infamous, when committed by seamen. The third section of this act, by declaring that, on the trial of cases under it, "it shall not be necessary that the accused shall have been previously indicted," distinctly recognizes that, without such declaration, an indictment would have been necessary. Now, if at the time of making this law, congress understood the constitution expressly to adopt for United States courts the proceeding by indictment in certain cases, and by implication (as has been contended), the proceeding by information or indictment, in other cases, then congress knowingly made a useless and a void law. Useless, because an adequately simple and summary procedure for prosecuting such offenses was already provided, namely, by information. Void, because if the constitution adopted one sort of procedure for certain cases, and that sort and another impliedly for all other cases, it thereby anticipated and prevented all provision of other methods by congress. Congress, in passing this act of 1864, evidently had in mind the fifth constitutional amendment; evidently supposed that amendment left it free to provide any mode of proceeding it pleased for the trial of offenses not capital nor infamous; and evidently did not suppose that the constitution fixed in the courts the right to proceed on criminal information. Since the act of 11th of June, 1864, congress has passed no law, from which any mode of procedure may be inferred to be sanctioned, other than those recognized by that and previous enactments.

I am not disposed to take cognizance of a proceeding, which has not ever been used in United States courts, which congress has never adopted or recognized, and which, however convenient it may be, does not give that effectual security against vexatious prosecution which is afforded by the action of a grand jury. I shall, therefore, decline to issue the warrant of arrest in this case. Motion overruled.